UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

METROPOLITAN LIFE INSURANCE
COMPANY,

       Plaintiff,                        CASE NO.: 8:14-cv-00886-T-24TBM

vs.

GLORIA WASHINGTON, AISHA LEE,
BRUCE LEE, JR., BRUCE LEE,
GREGORY DRUMMOND, and
MITCHUM-WILSON FUNERAL HOME, INC.

       Defendants.
_____/

**ORDER**

The matter before the Court is an interpleader action. On August 28, 2015, the Court held a hearing to determine the appropriate beneficiary/beneficiaries to the proceeds of a Federal Employees' Group Life Insurance Policy issued by Metropolitan Life Insurance Company ("MetLife") on Lorina Drummond (the "Decedent"). At the hearing, the Court heard testimony from the following witnesses: Aisha Lee, Bruce Lee, Jr., Gloria Washington, Lorenzo Washington, Deantwone Woodard, Sade Desponza, Pashen Reynolds, and Matthew Hansberry. The Court received into evidence four designation of beneficiary forms dated May 21, 2011, June 30, 2007, July 22, 2005, and November 15, 2001, a Statement of Funeral Goods and Services for the funeral arrangement of Lorina Drummond by Mitchum-Wilson Funeral Home, and medical records of the Decedent from December 20, 2006 to August 30, 2011.

I. **UNDERLINED** **UNDISPUTED FACTS**

The parties do not dispute the following facts. Lorina Drummond died on April 20, 2013. The Decedent had an insurance policy in the amount of $62,000 that was issued by Metropolitan Life Insurance Company ("MetLife"). MetLife tendered $62,000 plus interest into the registry of the Court on November 4, 2014 (totaling $62,471.51) and upon that deposit, MetLife was dismissed from the case.

Over the years, the Decedent, or someone else, forwarded four designation of beneficiary forms to MetLife. Those four forms all appear to be signed by the Decedent and witnessed by two witnesses. The most recent beneficiary designation is dated May 21, 2011. That designation names Gloria J. Washington as the sole beneficiary of the life insurance benefits. The next most recent designation is dated June 30, 2007 and names Gloria J. Washington and John R. Douglas as equal beneficiaries, each entitled to 50% of the life insurance benefits. The next most recent designation is dated July 22, 2005 and names Gregory Drummond, Bruce Lee, Jr., Aisha Lee and Kathryn Wilkerson as equal beneficiaries, each entitled to 25% of the life insurance benefits. The next most recent designation is dated November 15, 2001 and names Aisha Lee, Bruce Lee, Jr., and Bruce Lee, Sr. as the beneficiaries. Under that designation, Aisha Lee and Bruce Lee, Jr. are each to receive 40% of the life insurance benefits and Bruce Lee. Sr. is to receive 20%.

The parties agree that Kathryn Wilkerson and John Douglas are making no claim to the life insurance benefits and have been defaulted from this case (Dkt. 41). Those parties that are asserting a claim to the life insurance benefits are: Gloria Washington (the Decedent's friend), Aisha Lee (Decedent's daughter), Bruce Lee, Jr. (Decedent's son), Bruce Lee, Sr. (Decedent's ex-husband), and Gregory Drummond (Decedent's brother).[1] Mitchum-Funeral Home is also making

---

[1] Neither Bruce Lee, Sr. nor Gregory Drummond attended the August 28, 2015 hearing. The Court had previously informed the parties that they must be present at the hearing in order to assert a claim to the life

a claim in amount of $8,644.00 for funeral and burial expenses of the Decedent based on an assignment by Aisha Lee and Bruce Lee, Jr. of their interest in the life insurance benefits to the funeral home. There is no dispute as to the validity of the funeral home's $8,644.00 bill for burial and funeral services.

## II. FINDINGS OF FACT

The Court makes the following finds of fact based on the evidence presented at the August 28, 2015 hearing.

The Decedent lived with Gloria Washington in St. Petersburg, Florida from 2006 until her death on April 20, 2013.

Prior to coming to live with Gloria Washington, the Decedent suffered a stroke in 2005. While living with Gloria Washington, the Decedent was hospitalized at least once due to a fall.

The Decedent paid Gloria Washington for room and board in the amount of $550 per month. In return, the Decedent had her own room and was provided meals. In addition, Gloria Washington or another member of her household drove the Decedent to the doctor on a regular basis.

During the time she lived with Gloria Washington, the Decedent was disabled and walked with the assistance of a walker.

The medical progress notes of Dr. Enos Perez that are dated February 24, 2011 state that the Decedent had a routine physical and was "doing fairly well." The notes also state that "[t]he patient feels fine." Her medications were reviewed and not changed. The Decedent was to return to the doctor in six months for a follow up.

---

insurance benefits. Because the Court finds that Gloria Washington is entitled to the life insurance benefits, it need not decide whether Bruce Lee, Sr. and Gregory Drummond were entitled to assert a claim to the benefits despite their absence at the hearing.

There was no evidence that the Decedent was mentally incompetent during the time she lived with Gloria Washington.

Aisha Lee is the Decedent's daughter. She lives in Philadelphia, Pennsylvania. Aisha Lee had not seen the Decedent since about 2006; however, Aisha Lee did talk on the phone with the Decedent.

Bruce Lee, Jr. is the Decedent's son. He had not seen the Decedent nor had he talked to her since 2006.

The most recent beneficiary designation is dated May 21, 2011 and names Gloria J. Washington as the sole beneficiary of the life insurance benefits. That designation form was filled out by Gloria Washington and signed by the Decedent. It was witnessed by Matthew Hansberry, Gloria Washington's husband, and Sade Desponza, Gloria Washington's daughter. Gloria Washington mailed the completed form to the appropriate office and it was received by MetLife.

The next most recent beneficiary designation is dated June 30, 2007 and names Gloria J. Washington and John R. Douglas as equal beneficiaries, each entitled to 50% of the life insurance benefits. That designation form was filled out and signed by the Decedent. The Decedent mailed the completed form to the appropriate office and it was received by MetLife.

### III. APPLICABLE LAW

Pursuant to 5 U.S.C. § 8705(a) and 5 C.F.R. § 870.801(a), life insurance benefits of a Federal Employees' Group Life Insurance Program are paid to the designated beneficiaries. Pursuant to 5 C.F.R. § 870.802(b), a beneficiary designation must be in writing, signed by the insured, witnessed and signed by two people, and received by the appropriate office before the death of the insured. Further, an insured may change his or her beneficiary designation at any time without the knowledge or consent of the previous beneficiary. 5 C.F.R. § 870.802(f).

### A. Mental Incapacity

In order to invalidate a beneficiary designation, there must be a showing that the policy owner/insured lacked the mental capacity to make the designation at the time the insured made the designation. *In re Seminole Walls & Ceilings, Corp*, 355 B.R. 206, 232 (Bankr. M.D. Fla. 2007) *rev'd in part*, 388 B.R. 386 (M.D. Fla. 2008) and *aff'd in part, vacated in part*, 412 B.R. 878 (M.D. Fla. 2008) (citing *Parks v. Harden*, 130 So. 2d 626 (Fla. 2d DCA 1961)). Mere weakness of mind is not sufficient to set aside a beneficiary designation if the person had "sufficient intelligence to understand the transaction and act upon his own free will." *Id.* (citations omitted). Further, "[f]eebleness of body does not create a presumption of incompetence nor authorize a court to set aside a contract." *Id.*

There is a presumption of mental capacity in the insurance context. *Metropolitan Life Ins. Co. v. Taylor*, No. 3:11-cv-334-J-34JBT, 2012 WL 4356806, at *3 (M.D. Fla. Aug. 14, 2012) (citing *Rice v. Office of Servicemembers' Grp. Life Ins.*, 260 F.3d 1240, 1248 (10th Cir. 2001)). The burden of proof for incompetency is on the party alleging it by a preponderance of the evidence. *In re Seminole Walls*, 355 B.R. at 232.

### B. Undue Influence

A beneficiary designation may also be invalidated if it was the product of undue influence. A presumption of undue influence arises when a beneficiary (1) had a confidential relationship with the decedent at the time the alleged undue influence occurred, and (2) actively procured the bequest. *Metropolitan Life Ins. Co. v. Carter*, No. 3:04-cv-668-J-32HTS, 2005 WL 2810699, at * 15 (M.D. Fla. Oct. 27, 2005) (citing *In re Estate of Stezko*, 714 So. 2d 1087, 1090 (Fla. 4th DCA 1998)). In the will context, which can be extrapolated to the life insurance context, the Florida Supreme Court has listed nonexclusive factors as "warning signals pointing to active

procurement": (1) the presence of the beneficiary at execution of the will; (2) the presence of the beneficiary on those occasions when the testator expressed a desire to make a will; (3) a recommendation by the beneficiary of an attorney to draw the will; (4) knowledge of the contents of the will by the beneficiary prior to execution; (5) giving of instruction on preparation of the will by the beneficiary to the attorney drawing the will; (6) securing of witnesses to the will by the beneficiary; and (7) safekeeping of the will by the beneficiary subsequent to execution. *In re Estate of Carpenter*, 253 So. 2d 697, 702 (Fla. 1971). If a presumption of undue influence is established, the burden shifts to the beneficiary to establish by a preponderance of the evidence that there was no undue influence. *Hack v. Janes*, 878 So. 2d 440, 443 (Fla. 5th DCA 2004).

Documents that appear to be valid on their face are presumed to be valid against attacks based on undue influence. *Metropolitan Life Ins. Co. v. Taylor*, 2012 WL 4356806, at *3.

### IV. APPLICATION OF THE LAW TO THE FACTS

As to the beneficiary designations at issue, the Court begins with a presumption that the most recent designation, which is dated May 21, 2011 and names Gloria Washington as the sole beneficiary, is valid. It bears the signature of the Decedent, contains the signatures of two witnesses, and was forwarded to MetLife. Witnesses testified that they observed the Decedent sign the 2011 designation. There is no evidence of forgery. Thus, the burden is on those contesting the designation to show why it is not valid.

As to the issue of the Decedent's mental capacity, those suggesting that the Decedent lacked the mental capacity to execute the 2011 designation must show by a preponderance of the evidence that she lacked the capacity to do so at the time she made the designation. There has been no showing that the Decedent lacked mental capacity on May 21, 2011 when she executed the most recent beneficiary designation. Although there was testimony regarding the Decedent's

physical disabilities, feebleness of body does not create presumption of mental incapacity. The Court finds that the Decedent had the mental capacity to make the beneficiary designation on May 21, 2011.

With regard to undue influence, the Court looks to whether there was a confidential relationship between the Decedent and the beneficiary, Gloria Washington, and whether Washington actively procured the May 21, 2011 beneficiary designation. The Decedent lived with Washington from 2006 until her death on April 20, 2103. Washington drove the Decedent to doctor's appointment, cooked for her, and shopped for her. The Court finds that the Decedent and Gloria Washington had a confidential relationship. The factors present that indicate that Gloria Washington actively procured the May 21, 2011 beneficiary designation are as follows: Washington filled out the beneficiary designation form for the Decedent, she procured the two witnesses (her husband and daughter), and she mailed the completed form to the appropriate office. The presumption shifts to Washington to show by a preponderance of the evidence that there was no undue influence. Washington presented evidence that the Decedent was competent to execute the beneficiary designation form on May 21, 2011. Along with Gloria Washington, witnesses Lorenzo Washington, Deantwone Woodard, Sade Desponza, Pashen Reynolds, and Matthew Hansberry testified to the Decedent's competence. There was no evidence of abuse or neglect. In the social services interview dated October 28, 2010, contained in the Decedent's medical records, the Decedent indicated she was happy with her living situation. The February 24, 2011 medical progress notes, which is the medical record preceding the May 21, 2011 beneficiary designation, state that the Decedent was feeling fine and doing fairly well. The Court finds that there was no undue influence on the Decedent forcing her to execute the May 21, 2011 beneficiary designation.

In summary, the Court finds that as to the May 21, 2011 beneficiary designation that names Gloria Washington as the sole beneficiary of the life insurance benefits, there is no evidence of forgery, no evidence that the Decedent did not have the mental capacity to execute the beneficiary designation form on May 21, 2011, and no evidence of undue influence. The May 21, 2011 beneficiary designation is valid and Gloria Washington is entitled to the life insurance benefits.

Mitchum-Wilson Funeral Home and Gloria Washington have agreed that if Gloria Washington is the beneficiary of the life insurance benefits, $6,000.00 of the $62,471.51 that was deposited into the Court's registry should be paid to Mitchum-Wilson Funeral Home for funeral and burial expenses.

The Clerk is directed to pay $6,000.00 to Mitchum-Wilson Funeral Home, Inc., 1410 S. 20th Street, Philadelphia, PA, 19146. The Clerk is directed to pay $56,471.51, plus any interest accrued since the proceeds were deposited into the Court's registry, to the trust account of Gloria Washington's attorney, Mark Hanks, 9600 Koger Blvd. North, Suite 104, St. Petersburg, FL 33702.

The Clerk is further directed to close the case.

**DONE AND ORDERED** at Tampa, Florida, this 31st day of August, 2015.

SUSAN C. BUCKLEW
United States District Judge

**Copies furnished to:**
All Counsel